UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FWK HOLDINGS, LLC,

    Plaintiff,

v.                                       Civil Action No. 2:18-cv-23

MERCK & CO., INC., et al.,

    Defendants.

## REPORT AND RECOMMENDATION

Two years after resolving multi-district litigation in this court, two Direct Purchaser Plaintiffs, Cardinal Health, Inc. and Cencora, Inc.[1] (collectively "the DPPs") filed a Motion to Enforce the Direct Purchaser Plaintiff Settlement Agreement against one of the MDL Defendants, Merck & Co., Inc.,[2] (ECF No. 182). The DPPs assert that the parties' written Settlement Agreement prevents Merck from litigating third-party claims against them in the United States District Courts for the Districts of Minnesota and New Jersey in antitrust cases pending against Merck by United Healthcare Services, Inc. ("UHS") and Humana, Inc. ("Humana"). (ECF No. 187, at 1-3) (sealed version). Merck sought indemnity under the terms of the Settlement Agreement through third-party

---

[1] "Cencora" or "Cencora, Inc." refers collectively to AmerisourceBergen Drug Corp., AmerisourceBergen Corp., and Cencora, Inc.

[2] "Merck" or "Merck & Co., Inc." refers collectively to Merck Sharp & Dohme Corp., n/k/a Merck Sharp & Dohme LLC, Schering Plough-Corp., Schering Corp., and MSP Singapore Co. LLC.

complaints filed in both jurisdictions. Id. at 1-2. The DPPs argue that the terms of that Agreement—and this court's Dismissal Order—require that questions of Merck's right to indemnity must be resolved in the United States District Court for the Eastern District of Virginia instead. Id. at 2-3; (ECF No. 208, at 13) (sealed version). The DPPs request that this court "enter an order barring Merck from (1) pursuing actions in other jurisdictions to enforce the [] Settlement Agreement . . . (2) pursuing actions to enforce the [] Settlement Agreement until after it has submitted its claims to mediation and arbitration . . . and (3) bringing any action to appeal the decision of [the mediator] to any jurisdiction other than the United States District Court for the Eastern District of Virginia." (ECF No. 187, at 13). Merck opposes the motion, arguing that the district courts in Minnesota and New Jersey where Merck first filed its indemnity claims have jurisdiction to resolve its right to indemnity under the Agreement. (ECF No. 203, at 1-3) (sealed version).

This matter was referred to the undersigned for a Report and Recommendation on the DPPs' Motion to Enforce Settlement pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure.[3] After considering the parties' arguments and

---

[3] As of this filing, neither party requested oral argument, and with the matter thoroughly briefed, I did not find that oral argument would aid the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J).

the terms of the Settlement Agreement itself, as explained below, I find that the terms the DPPs rely upon merely confer jurisdiction on this court, but do not mandate that the proceedings occur here. Accordingly, this court should decline to intervene in the indemnity dispute, leaving its resolution to the district courts in Minnesota and New Jersey. Therefore, I recommend the court DENY the DPPs' Motion to Enforce the Settlement Agreement on the grounds alleged, (ECF No. 182).

## I.   **BACKGROUND**

**A.   Zetia Litigation, Subsequent Settlement, and the Remanded Cases.**

This Motion arises from Multidistrict Litigation ("MDL") consolidated for pretrial matters in this court in 2018. See In re Zetia (Ezetimibe) Antitrust Litig., No. 2:18-md-2836 (E.D. Va.) ("Zetia MDL"). The DPPs were among a group of direct purchasers of the cholesterol medication, ezetimibe, sold by Merck under the brand name Zetia. Zetia MDL (ECF No. 1629). In the Zetia MDL, Plaintiffs alleged that Merck conspired with a generic drug maker, Glenmark, to artificially inflate the price for both the branded and generic drug by entering into a reverse payment settlement of patent litigation that Glenmark brought against Merck during the patent term. See (ECF Nos. 128, 1642). Comprised initially of over twenty cases pending in seven jurisdictions, eventually three groups of plaintiffs, which included Direct Purchasers, End

Payers, and Retailers, litigated class and individual claims against Merck and Glenmark for five years. The cases proceeding to trial in this district eventually settled in the first days of jury selection. See Zetia MDL (ECF No. 2139). The parties reached a settlement with the aid of a private mediator, retired District Judge Layn R. Phillips, which is memorialized in a confidential Settlement Agreement now made part of the record in this matter as a sealed exhibit. Mem. Law Supp. DPP Cardinal Health & Cencora's Mot. Enforce DPP Settlement Agreement Against Merck ("DPPs' Mem.") Ex. A (ECF No. 187-1) (sealed version).

As relevant to this dispute, the Settlement Agreement was drafted to ensure that this court could retain jurisdiction to enforce its terms. Specifically, the Agreement states:

> If any disputes arise out of the proper interpretation of this Agreement, said disputes are to be mediated on an expedited basis and decided in the first instance by Judge Layn. R. Phillips.

> Subject to the foregoing paragraph 16, Defendants and Direct Purchaser Plaintiffs hereby irrevocably submit to the jurisdiction of the United States District Court for the Eastern District of Virginia with respect to any suit, action, proceeding seeking to enforce the terms of this Agreement, including any appeal from a decision by Judge Phillips.

Id. ¶¶ 16-17. In addition, in dismissing the case against Merck in this court, the Order provides: "The Court retains jurisdiction with respect to any suit, action, proceeding seeking to enforce

4

the terms of the settlement agreement resolving these actions." Zetia MDL (ECF No. 2139, at 1).

In July 2022, prior to settlement, certain plaintiffs—including large insurers UHS and Humana—advised the court that they would not proceed to trial in this district but instead intended to seek remand to jurisdictions where they had originally filed, namely the United States District Court for the Districts of Minnesota, United HealthCare Servs., Inc. v. Merck & Co., Inc., No. 0:20-cv-1909 (D. Minn) ("UHS Case"), and New Jersey, Humana Inc. v. Merck & Co., Inc., No. 2:23-cv-23023 (D.N.J.) ("Humana Case").[4]   See Zetia MDL (ECF Nos. 1636, 1639).  And after the settlements here were completed, in 2023, the court issued orders remanding both of those cases and closing the MDL.  Zetia MDL (ECF Nos. 2172-73).  The UHS and Humana cases sought compensation for Zetia purchased at allegedly inflated prices due to the same reverse payment claims, just as in the cases that proceeded to trial here.  See UHS Case (ECF No. 1); Humana Case (ECF No. 1). Both UHS and Humana purchased Zetia, and at least some of their purchases were made using drug wholesalers Cencora and Cardinal, who were both included in the group of DPPs that settled the case

---

[4] UHS had originally commenced its separate action in the District of Minnesota in September 2020.  UHS Case (ECF No. 1).  Humana originally commenced its separate action in the District of New Jersey in September 2021.   Humana Case (ECF No. 1).   Both lawsuits were initially consolidated in the Zetia MDL until both UHS and Humana informed the court of their intent to seek remand.

proceeding to trial here.   According to the Complaints filed in both cases, some of the claims asserted in the remanded UHS and Humana suits were brought by assignment of those claims from Cardinal Health and Cencora.   UHS Case Ex. A (ECF No. 55-1, ¶ 9); Humana Case (ECF No. 61, ¶¶ 12-13).   Since the 2023 remand, UHS and Humana have been separately pursuing their claims in Minnesota and New Jersey.

**B.   Merck's Third-Party Claims and the Present Motion to Enforce.**

On March 24, 2025, Merck filed third-party claims seeking indemnification from Cencora and Cardinal Health and a declaratory judgment in the UHS and Humana cases pending in the United States District Court for the Districts of Minnesota, UHS Case (ECF No. 77), and New Jersey, Humana Case (ECF No. 68).   In its third-party complaints, Merck asserts that under the Settlement Agreement, Cardinal Health is obligated to indemnify Merck for the claims asserted by UHS, and Cencora is obligated to indemnify Merck for claims asserted by Humana.   See DPPs' Mem. Ex. B (ECF No. 183-2, ¶ 69); DPPs' Mem. Ex. C (ECF No. 183-3, ¶ 50).   Merck also seeks declaratory judgment to resolve alleged controversies surrounding Merck's rights under the Settlement Agreement.   DPPs' Mem. Ex. B (ECF No. 183-2, ¶ 81); DPPs' Mem. Ex. C (ECF No. 183-3, ¶ 53).

The DPPs now seek to prevent Merck from pursuing its claims in the Districts of Minnesota and New Jersey.   On June 6, 2025, the DPPs filed their Motion to Enforce, claiming that the Eastern

6

District of Virginia is the only forum in which Merck can litigate its claims because this court retained jurisdiction to enforce the Settlement Agreement and because the parties agreed to "irrevocably submit" to the jurisdiction of the Eastern District of Virginia. DPPs' Mem. (ECF No. 187, at 8). The DPPs request that this court enter an order "barring Merck from . . . pursuing actions in other jurisdictions to enforce the Zetia Settlement Agreement . . . ." Id. at 13.

The DPPs also ask this court to order Merck[5] to submit its indemnity and declaratory judgment claims to Judge Phillips under the mediation provisions of the Agreement and require that any appeal from Judge Phillips's decision be brought in the Eastern District of Virginia. DPPs' Mem. (ECF No. 187, at 10, 13). Finally, the DPPs claim that Merck's "decision to pursue parallel claims in multiple jurisdictions—despite having agreed to a single exclusive forum—invites conflicting interpretations of the same agreement and undermines the clear purpose of the Zetia Settlement Agreement's dispute resolution provisions." Id. at 12.

On July 11, 2025, Merck responded, arguing that "[t]he DPPs' challenge to the venues for Merck's third-party claims pending in

---

[5] In their conclusion, the DPPs phrase their request differently, asking that this court enter an order barring Merck from "pursuing actions to enforce the Zetia Settlement Agreement until after it has submitted its claims to mediation and arbitration . . . ." DPPs' Mem. (ECF No. 187, at 13). As explained below, I recommend the court decline to weigh in on the issue of Judge Phillips's involvement.

co-equal federal courts is not properly before this Court nor have the DPPs justified the extraordinary relief they seek . . . ." Merck's Opp'n to Former Pls. Cardinal & Cencora's "Mot. to Enforce" the DPP Settlement Agreement Against Merck[6] ("Merck's Opp'n") (ECF No. 203, at 8) (sealed version). Specifically, Merck claims that the DPPs' Motion to Enforce is procedurally improper because when seeking to compel alternative dispute resolution, a party must request a stay in the federal court where the action is pending. Id. at 9. Similarly, when a party claims that a dispute must be brought in a different federal venue under a mandatory forum selection clause, the party must seek to transfer the matter under 28 U.S.C. § 1404(a). Id.

Merck also argues that the relief requested in the DPPs' Motion is extraordinary and unjustified, claiming that "whether construed as asking for a writ of mandamus to a fellow district court or an anti-suit injunction[,]" the relief sought is "unprecedented." Id. at 13. Merck asserts that the DPPs fail to show any extraordinary situation that warrants the court issuing a writ of mandamus, nor do they make the requisite showing for injunctive relief.[7] Id. at 14-15, 18-20. Further, Merck alleges

---

[6] The court has shortened the title of Merck's Memorandum for clarity.
[7] Merck also alleged in passing that the court cannot base injunctive relief on an ancillary settlement agreement unrelated to the request for relief in the underlying complaint on the docket, complaining that the DPPs filed the present motion in a closed case in which neither Cencora nor Cardinal are parties. Id. at 19 n.14. I will briefly explain why the DPPs filed their motion on the FWK Holdings, LLC v. Merck & Co.,

that the DPPs fail to overcome the first-filed rule, entitling the Districts of Minnesota or New Jersey to decide whether its venue is proper.   Id. at 16-18.   Finally, Merck argues that the Settlement Agreement does not contain a mandatory forum selection clause exclusively selecting the Eastern District of Virginia as the forum to preside over disputes arising out of the Settlement Agreement.   Id. at 20-24.

On July 17, 2025, the DPPs replied, reiterating their earlier arguments and responding to Merck's first-filed argument.   Joint Reply DPPs Cardinal Health & Cencora Supp. Mot. Enforce DPPs' Settlement Agreement Against Merck ("DPPs' Reply") (ECF No. 208) (sealed version).   Specifically, the DPPs argue that the first-filed rule is not mandatory, and that the court must consider

---

Inc., No. 2:18-cv-23, docket.  Plaintiffs originally filed a class action complaint under this style and case number on January 16, 2018, seeking to represent a class of similarly situated DPPs.  Compl. (ECF No. 1). Neither Cencora nor Cardinal Health were named plaintiffs, but both were expected to be class members.  Following consolidation in the MDL, it was still expected that the DPPs' claims would proceed under a consolidated class action complaint, and as a result, in November 2018 the court—after notice to the parties—directed the clerk to cease spreading docket entries from the MDL docket to the individual member cases, including this one.  (ECF Nos. 169, 180).  This central docket continued until all the cases scheduled for trial here concluded, and this member case remained open until the court entered its dismissal order in the MDL on May 23, 2023.  Zetia MDL (ECF No. 2139).  While the MDL was pending, the DPPs lost their bid for class certification, and thereafter both Cencora and Cardinal Health joined as named parties in the DPPs' Second Amended Consolidated Complaint.  Zetia MDL (ECF No. 1642).  Thus, when these two DPPs filed the Motion to Enforce, the court directed it be filed in this member case because all necessary counsel were already on that docket, and the Motion did not require notice to other plaintiffs or defendants.  The style specifically references additional filings made by the DPPs—including Cencora and Cardinal—in the Zetia MDL.

several factors when considering whether to apply the first-filed rule. Id. at 4-8. As explained below, I recommend that the court DENY the DPPs' Motion to Enforce.

## II. ANALYSIS

District courts have an inherent equity power to enforce settlement agreements. Hensley v. Alcon Labs., Inc., 277 F.3d 535, 540 (4th Cir. 2002); see also Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 381-82 (1994) (holding that without an independent basis for jurisdiction or if the exercise of ancillary jurisdiction is inappropriate, courts do not have jurisdiction to enforce a settlement agreement). Standard contract principles apply when considering a motion to enforce a settlement agreement. Bradley v. Am. Household, Inc., 378 F.3d 373, 380 (4th Cir. 2004). When deciding whether to grant a motion to enforce settlement, a court "(1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." Campbell v. Adkisson, Sherbert & Assoc., 546 F. App'x 146, 152 (4th Cir. 2013); see also Moore v. Beaufort Cnty., N.C., 936 F.2d 159, 162 (4th Cir. 1991). Jurisdiction over an enforcement action can arise where the court gives a "clear indication that it is . . . retaining jurisdiction" over such an action. New Cingular Wireless PCS, LLC v. Spotsylvania Cnty., No. 3:12-cv-351, 2014 WL 2864107, at *2 (E.D. Va. June 24, 2014) (quoting Smyth v. Rivero, 282 F.3d 268, 283 (4th Cir. 2002)). In this case, the court

10

unambiguously retained jurisdiction in its dismissal order.  Zetia
MDL (ECF No. 2139, at 1).

    In fact, neither party disputes that this court could exercise
jurisdiction over an indemnity claim arising out of the Settlement
Agreement.  But the DPPs' Motion argues that only this court can
do so.[8]  I disagree.  The DPPs claim, in effect, that the language
in  the  Settlement  Agreement  in  which  the  parties  agreed  to
"irrevocably  submit"  to  the  jurisdiction  of  the  United  States
District Court for the Eastern District of Virginia serves as a
mandatory forum selection clause.  Based on this interpretation of
the  Agreement's  language,  the  DPPs  ask  this  court  first  to
"enforce" the Settlement Agreement by enjoining Merck from filing
its claims in other federal district courts.  But the DPPs fail to
adequately address the central question raised by their own motion:
whether the language of the Agreement, in fact, mandates that the
Eastern District of Virginia serve as the exclusive court in which

---

[8] Merck claims that the DPPs' Motion to Enforce can be resolved solely
on procedural grounds and urges this court to decline to decide whether
the Settlement Agreement requires pre-suit mediation or whether it
includes a mandatory forum-selection clause.  Merck's Opp'n (ECF No.
203, at 20-21).  However, the DPPs' entire motion is premised on the
fact that the Agreement mandates that any claim arising out of the
Agreement be heard in the Eastern District of Virginia.  And in
opposition to Merck's procedural arguments, the DPPs again rely on their
contractual claims.  Based on the arguments presented in the briefs, and
in light of the recommended disposition, judicial economy favors
resolving the threshold mandatory forum-selection clause issue now and
leaving the other properly raised contractual issues to the Districts
of Minnesota and New Jersey to resolve.

the parties can litigate disputes arising out of the Agreement. The language does not.

"'[A]n agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction' in another unless the clause expressly sets forth 'specific language of exclusion.'" BAE Sys. Tech. Sol. & Servs., Inc. v. Rep. of Korea's Def. Acquisition Program Admin., 884 F.3d 463, 472 (4th Cir. 2018) (quoting IntraComm, Inc. v. Bajaj, 492 F.3d 285, 290 (4th Cir. 2007)). Forum selection clauses found mandatory in the Fourth Circuit typically provide "that a particular place constitutes the 'sole' or 'only' or 'exclusive' forum." Id. These terms do not appear in the jurisdictional reservation the DPPs rely on.

Here, the language the DPPs point to in the Agreement states that "Defendants and Direct Purchaser Plaintiffs hereby irrevocably submit to the jurisdiction of the United States District Court for the Eastern District of Virginia with respect to any . . . proceeding seeking to enforce the terms of this Agreement, including any appeal from a decision by Judge Phillips." DPPs' Mem. Ex. A (ECF No. 187-1, ¶ 17). The clause "hereby irrevocably submit" does not mandate that the parties submit to the jurisdiction of the Eastern District of Virginia to the exclusion of all other jurisdictions. As the DPPs acknowledge, the language of the Agreement contains no "specific language of exclusion." BAE Sys. Tech. Sol. & Servs., Inc., 884 F.3d at 472;

DPPs' Reply (ECF No. 208, at 13) ("Paragraph 17 admittedly does not include the word 'exclusive' or 'shall.'"). In fact, the clause does not appear to serve as a forum selection clause at all, instead requiring that the parties submit to the jurisdiction of this district if "any . . . proceeding seeking to enforce the terms of this Agreement" is filed here. In other words, this clause prevents a party from claiming that the Eastern District of Virginia does not have jurisdiction to hear a dispute arising from the Agreement, but does not suggest that the parties intended that the Eastern District of Virginia serve as the "sole," "only," or "exclusive" forum.

The DPPs point to four cases they claim demonstrate that the phrase "irrevocably submit" is mandatory. But the DPPs cite the clauses in those cases and the courts' holdings out of context. In <u>Gershick v. ECPI College of Technology, L.C.</u>, the court analyzed an express forum selection clause that stated:

> Employee hereby irrevocably submits to the jurisdiction of the Circuit Court of the City of Norfolk, Virginia, in any action or proceeding arising out of, or relating to, this Agreement, and Employee hereby irrevocably agrees that all claims in respect of any such action or proceeding shall be heard and determined in such Court.

No. 2:09-cv-271, 2009 WL 10689485, at *2 (E.D. Va. Aug. 6, 2009). Contrary to the DPPs' claim, this case examined a different issue surrounding the forum selection clause in dispute. The question in <u>Gershick</u> was not whether "irrevocably submit" mandated that the

Norfolk Circuit Court serve as the exclusive forum for all claims, but whether the clause bound the employer to submit to the jurisdiction of the Norfolk Circuit Court after its employee was required to file there. Id. at *2-4. In remanding the case, this court assumed the employer would not be compelled to file its own action in state court—but was bound to submit to its jurisdiction after its employee invoked the clause. Id. at *3. Therefore, Gershick does not support the DPPs' position.

The DPPs also cite Hunter Technology Corp. v. Omega Global Technologies, Inc. In this case, the court assessed language that stated:

> This Order and the performance of the parties hereunder shall be construed in accordance with and governed by laws of the State of Illinois. [Buyer] and Seller irrevocably submit to the jurisdiction of the Courts of the State of Illinois and the United States District Court for the Northern District of Illinois in any action or proceeding arising out of or relating to the Order, and waive the defense of an inconvenient forum to the maintenance of such action or proceeding.

505 F. Supp. 3d 802, 804 (N.D. Ill. 2020). The court relied on a number of factors in determining that this forum selection clause was mandatory: (1) the performance under the order "shall be construed in accordance with and governed by laws of the State of Illinois," (2) that the parties "irrevocably submit to the jurisdiction . . . in any action or proceeding[,]" and (3) the parties' waiver of the defense of inconvenient forum. Id. at 807. Here, the clause the DPPs rely on in the Agreement has only one

14

out of the three elements present in <u>Hunter Technologies</u>—the terms

"irrevocably submit" and "any." <u>See</u> DPPs' Mem. Ex. A (ECF No.

187-1, ¶ 17). Absent any other mandatory language, these terms do

not mandate that the Eastern District of Virginia serve as the

exclusive forum.

In <u>Gutermuth Investments, Inc. v. Coolbrands Smoothies</u>

<u>Franchise, LLC</u>, the court also considered a mandatory forum

selection clause that stated:

> You agree that You shall institute any action and that
> We may institute any action against You which is not
> required to be arbitrated hereunder in any state or
> federal court of general jurisdiction in the County of
> Suffolk, New York, or the state court of general
> jurisdiction or the Federal District Court nearest to
> Our executive office at the time such action is filed.
> You irrevocably submit to the jurisdiction of such
> courts and waive any objection You . . . have to either
> the jurisdiction or venue of such courts.

No. SA-06-CA-471, 2006 WL 2933886, at *2 (W.D. Tex. Oct. 11, 2006).

The <u>Gutermuth</u> court held that this clause was mandatory not because

of the "irrevocably submit" language alone, but because "the

agreements [explicitly] provide that plaintiffs must commence any

action in the specified jurisdictions." <u>Id.</u> Again, the language

in the Agreement here is much more limited, and <u>Gutermuth</u> does not

support the DPPs' argument.

Finally, although perhaps the most persuasive example, <u>Water,</u>

<u>Inc. v. Everpure, Inc.</u>, does not suggest that the language of the

Settlement Agreement is mandatory.   The clause in Water, Inc. stated:

> Since Everpure and [Plaintiff] have a significant
> interest in the consistent interpretation of this
> agreement, and Everpure expects to have Select Master
> Distributors throughout the United States, Everpure and
> [Plaintiff] irrevocably submit, and waive any objection
> either may have, to personal jurisdiction or venue in
> the state and federal courts of applicable subject
> matter jurisdiction where Everpure's executive offices
> are located in Illinois. . . .

No. 08-cv-218, 2008 WL 11338410, at *2 (C.D. Cal. Aug. 4, 2008). Notably, the court in Water, Inc. relied on the fact that "the clause identifies itself as a forum selection clause," referring to the heading above the clause.  Id.  No such heading is present in the Agreement in dispute.   And although the court recognized that the clause used the term "irrevocably submit" rather than "submit" alone, id., the clause in Water, Inc. included a waiver of objection and provided more specific language regarding "personal jurisdiction" and "venue" that is not present in this Agreement.  The DPPs have not pointed to a case in which a court found jurisdiction mandatory solely on the basis of "irrevocably submit."  The clause here is not described as a forum selection clause, and no other exclusive language is included in the text in dispute.  Accordingly, the court finds that the language is not mandatory.

The DPPs also claim that the language in this court's dismissal order confers exclusive jurisdiction on the Eastern

District of Virginia to hear disputes over the Agreement.  See DPPs' Mem. (ECF No. 187, at 8-9); DPPs' Reply (ECF No. 208, at 2-3) (citing Kokkonen, 511 U.S. at 381-82).  In Kokkonen v. Guardian Life Insurance Co., the United States Supreme Court addressed whether district courts had inherent jurisdiction to enforce settlement agreements in cases that arise under diversity jurisdiction.  511 U.S. at 377-78.  The defendant in Kokkonen removed the case to federal court based on diversity jurisdiction, and the case later settled.  Id. at 376-77.  After settlement, the parties disagreed over the plaintiff's obligations under the settlement agreement, and the defendant moved to enforce the agreement in federal court.  Id. at 377.  The district court exercised jurisdiction over the settlement agreement even though it did not retain jurisdiction in its dismissal order.  Id.  The Supreme Court held that Federal Rule of Civil Procedure 41(a)(1)(ii) did not confer jurisdiction on the court that filed the dismissal order without an express reservation of jurisdiction in the dismissal order, meaning that enforcement of the settlement agreement required "its own basis for jurisdiction."  Id. at 377-78.  In holding that the district court did not have jurisdiction to enforce the settlement agreement, the Court noted that:

> The situation would be quite different if the parties'
> obligation to comply with the terms of the settlement
> agreement had been made part of the order of dismissal—
> either by separate provision (such as a provision
> "retaining jurisdiction" over the settlement agreement)

or by incorporating the terms of the settlement agreement in the order.

***

[W]e think the court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain jurisdiction over the settlement contract[] if the parties agree.  Absent such action, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.

Id. at 381-82.  After Kokkonen, many courts, including the Eastern District of Virginia, made it a routine practice to retain jurisdiction over the settlement agreement in their dismissal orders to ensure that the court could preside over motions to enforce if called upon.  See, e.g., Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 203 F.3d 291, 299 (4th Cir. 2000) (holding that provision stating, "The Court retains jurisdiction to enforce the settlement of the parties and the prior Orders in this case," satisfies the Kokkonen requirement).  Otherwise, the dismissing court would often lack jurisdiction to enforce the settlement agreement, particularly in cases arising out of diversity jurisdiction or resolving state law claims.  See New Cingular Wireless PCS, LLC, 2014 WL 2864107, at *2 (discussing how in actions dismissed pursuant to Rule 41(a)(1)(A)(ii), federal courts lack jurisdiction unless "(1) an independent jurisdictional ground exists or (2) the exercise of ancillary jurisdiction is appropriate.").

Thus, the DPPs' reliance on Kokkonen is misplaced. A statement retaining jurisdiction over a settlement agreement does not confer exclusive jurisdiction over a settlement agreement. And the Court in Kokkonen did not suggest that a retention of jurisdiction was exclusive—only that without an express reservation of jurisdiction or some other independent basis for federal jurisdiction, federal district courts do not have inherent jurisdiction over the enforcement of settlement agreements. Recognizing as much, Merck does not dispute that the Eastern District of Virginia has jurisdiction to enforce the Settlement Agreement. Indeed, under Kokkonen and this court's clear language in its Dismissal Order, this court does have jurisdiction over the Settlement Agreement. See Zetia MDL (ECF No. 2139, at 1) ("The Court retains jurisdiction with respect to any suit, action, proceeding seeking to enforce the terms of the settlement agreement resolving these actions."). But this court does not have exclusive jurisdiction over the enforcement of the Agreement. The language of the Dismissal Order and the parallel clause in the Settlement Agreement itself are both permissive. They do not require that the Eastern District of Virginia serve as the only court to hear such disputes; instead, they merely reserve jurisdiction to hear such disputes when they do arise.

Two additional facts bear mention. No judicial officer of this court was involved in negotiating, consummating, or

19

documenting the parties' settlement.  Although Magistrate Judges here frequently assist parties in reaching negotiated resolutions, here the parties relied on a private mediator.  In fact, the court had no role in the DPPs' settlement, which did not require court approval.  The Settlement Agreement itself was not part of the Zetia MDL record and was not filed until presented as an exhibit supporting the DPPs' Motion.  Also, at the time of the settlement, UHS and Humana had already confirmed their intention to seek remand.  See Zetia MDL (ECF Nos. 1636, 1639).  Therefore, there is no independent reason outside of the language of the Settlement Agreement for this court to exercise exclusive jurisdiction over the issue.

This recommendation is narrow and dictated by the procedural posture of Merck's indemnity claims in Minnesota and New Jersey. The language of the Settlement Agreement and this court's Dismissal Order do not confer exclusive jurisdiction on the Eastern District of Virginia to resolve disputes arising out of the Agreement. Therefore, this court cannot "enforce" the Settlement Agreement by enjoining Merck from litigating its claims in Minnesota and New Jersey—co-equal district courts in which the claims have already been filed.  See Negrete v. Allianz Life Ins. Co., 523 F.3d 1091, 1098 (9th Cir. 2008) ("[O]rdering the parties not to proceed is tantamount to enjoining the proceedings.").  "It is particularly rare for a federal court to enjoin litigation in another federal

20

court[,]" and there is no compelling reason to do so here.  In re Jimmy Johns Overtime Litig., 877 F.3d 756, 762 (7th Cir. 2017); Bergh v. Washington, 535 F.2d 505, 507 (9th Cir. 1976) ("When an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunction should be granted only in the most unusual cases.").  The Eastern District of Virginia is not the sole district able to interpret the terms of the Settlement Agreement, nor do the terms of the Agreement mandate such a result.  As a result, I recommend the court leave the issues of Judge Phillips's involvement, the scope of any indemnity, and declaratory judgment to the District Courts of Minnesota and New Jersey to resolve, and that the court deny the DPPs' Motion.

### III.  RECOMMENDATION

For the foregoing reasons, this report recommends that the court DENY the DPPs' Motion to Enforce the Settlement Agreement, (ECF No. 182).

### IV.  REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.  Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report

is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia
August 4, 2025

22